CARTACHO (UNITED STATES v.). See Case No. 14,738.

CARTER, Ex parte. See Cases Nos. 8,981 and 17.488–17,491.

## Case No. 2,470.

### In re CARTER.

[3 Biss. 195; 6 N. B. R. 299; 4 Chi. Leg. News, 187; 3 Leg. Op. 221; 6 Am. Law Rev. 755.] [1]

District Court, D. Indiana. March, 1872.

BANKRUPTCY—SUSPENDING PAYMENT OF COMMERCIAL PAPER.

When a man enters the commercial community he assumes all the responsibilities attaching to his calling, and is bound to take care of his commercial paper, whether made before or after he commenced business, and whether given in connection with his business or not. Therefore, if his commercial paper, given before, but falling due after he engaged in business, is allowed to remain unpaid for fourteen days after maturity, he can be adjudged a bankrupt.

In bankruptcy. This was a petition in bankruptcy filed by the Hydraulic Woolen Mill Company, of Columbus, Indiana, against William Carter, of the same place, alleging three distinct acts of bankruptcy: First—That Carter sold and delivered to David Aiken personal property to the value of six hundred dollars, receiving a credit for that amount upon a debt due from him to Aiken, he, Carter, being at the time insolvent, and intending by the payment to give Aiken a preference. Second—That Carter, being insolvent, and intending to give Francis J. Crump an unlawful preference, transferred to him, in payment of a debt, the promissory note of Harvey Daily for one thousand dollars. Third—That Carter, being a merchant, trader and manufacturer, suspended payment of his commercial paper, and had not resumed payment within a period of fourteen days; the said paper being Carter's promissory note for seven hundred dollars, made at Columbus, Indiana, on the 17th day of June, 1870, payable in one hundred and eighty days, to the order of the Hydraulic Woolen Mill Co., at the bank of McEwen & Sons, in the said city of Columbus.

McDonald, Butler & McDonald, for creditor.

Porter, Harrison & Hines, for bankrupt.

GRESHAM, District Judge. I think the testimony shows that at the time of the sale and delivery of the personal property to Aiken, and of the transfer of the Daily note to Crump, Carter was insolvent; but it is not so clear that in these acts he intended preferences in favor of Aiken and Crump. The question is embarrassing, and I shall not undertake to dispose of it. It ceases to be important, inasmuch as Carter must be adjudged a bankrupt on the third ground specified in the petition.

Promissory notes payable to order or bearer, in a bank in this state, are by the statutes of Indiana placed on the footing of inland bills of exchange. The note described in the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 6 Am. Law Rev. 755, contains only a partial report.]

third ground of bankruptcy in the petition and put in evidence, is therefore Carter's commercial paper. At the time the note was executed he was not in business; he was neither merchant, trader, nor manufacturer, but at the time the note fell due, and the obligation to redeem his promise to pay matured, he was the owner of a large flouring mill, and engaged in buying wheat, and in manufacturing and selling flour. The precise question thus presented has never been passed upon by the courts, and is one of great importance to the commercial community.

It is argued with much force and earnestness by counsel for respondent, that the note is not commercial paper within the meaning of clause nine, section thirty-nine of the bankrupt act, because, when executed. Carter did not belong to any of the classes designated in that clause, and did not therefore pledge himself to commercial promptness in its payment. I am referred to the cases In re Nickodemus [Case No. 10,254]; In re McDermott, Patent Bolt Manuf'g Co. [Id. 8,-750]; Davis v. Armstrong [Id. 3,624]; Innes v. Carpenter [Id. 7,049]; and In re Lowenstein [Id. 8,574].—in support of the position that the statute, in naming commercial paper, means paper given by a merchant, trader, manufacturer, etc., in the direct course of his business. The authorities upon this point are not uniform, and I am left therefore free to follow those which seem best supported by reason.

The language of the statute is: "Who being a banker, broker, merchant, trader, etc., * * * has stopped or suspended, and has not resumed payment of his commercial paper within a period of fourteen days."

The phrase, "commercial paper," as here employed, was intended, it seems to me, to embrace all paper which by usage or statute, is brought within the custom of merchants. I think with Lowell, J., in Re Chandler [Case No. 2,591], that in saying that any person belonging to one of certain designated classes should be deemed a bankrupt if he failed to pay his commercial paper, congress simply referred to a well known and conclusive test of insolvency.

The language of the act above quoted is a legislative declaration of insolvency applied to the particular classes named on account of their relation to the commercial world.

In Davis v. Armstrong, above cited. Hall, J., held that the statute extended to one who at the time he made the note was a merchant, but had gone out of business before it became payable. Such a construction, however, would not warrant the conclusion that one who is within the letter is not also within the meaning of the act. To embrace the first class, the statute must be so extended as to include persons not within its language; while to exclude the second class, is to adopt a construction which rejects those who are expressly within its terms.

If the construction for which the respondent's counsel contend is the true one, it becomes necessary to inquire into the origin of the debt, in proof of which a note or bill is offered; and a merchant, trader, or manufacturer, may suspend payment of all his commercial paper, except such as he has executed in connection with his particular trade or business, and yet maintain his standing for solvency in the commercial world. The dishonor of the paper of a merchant, trader, or manufacturer, given when not engaged in business, or, if he were in business, given in some transaction not immediately connected with his business, is not less damaging to his commercial reputation than the dishonor of commercial paper given in the usual course of his business. One affords no better test of insolvency than the other.

When a man enters the commercial community as a merchant, trader, banker, or otherwise, he assumes all the responsibilities which attach to his calling. One of these is the obligation to take care of all of his commercial paper, whether made before or after he commenced business, and whether given by him as the result of his particular business, or as the result of some transaction not directly within the scope of that business.

The respondent is adjudged bankrupt, and the proper decree will be entered.